AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)    ☐ Original    ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
for the
Central District of California

LODGED
CLERK, U.S. DISTRICT COURT
6/10/2025
CENTRAL DISTRICT OF CALIFORNIA
BY: ___MMC___ DEPUTY

FILED
CLERK, U.S. DISTRICT COURT
JUN 10 2025
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

United States of America

v.

Aaron Anthony Yanez,

Defendant(s)

Case No.  2:25-MJ-03543-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of April 3, 2025, in the county of Los Angeles in the Central District of California, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2114(a) | Robbery of a United States Postal Carrier |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/
Complainant's signature

Eric Martinez, Postal Inspector
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:  6/10/2025

Judge's signature

City and state:  Los Angeles, California

Hon. Jacqueline Choolijan, U.S. Magistrate Judge
Printed name and title

AUSA: Max A. Shapiro (x7419)

## AFFIDAVIT

I, Eric Martinez, being duly sworn, declare and state as follows:

### I. PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of a criminal complaint and arrest warrant against Aaron Anthony YANEZ ("YANEZ") for violation of 18 U.S.C. § 2114 (Robbery of a United States Postal Carrier).

2. This affidavit is also made in support of an application for a warrant to search a black "Vortex" cell phone with a clear case, listed as item "EV-7" in Los Angeles County Sheriff's Department Industry Station ("LASD Industry") file number: 925-03336-1421-031 (the "SUBJECT DEVICE"), as described more fully in Attachment A.

3. The requested search warrant seeks authorization to seize evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 2114(a) (Robbery of a United States Postal Service Letter Carrier), 18 U.S.C. § 1708 (Possession of Stolen Mail); 18 U.S.C. § 1029 (Access Device Fraud), 18 U.S.C. § 1028A (Aggravated Identity Theft), and 18 U.S.C. § 922(g)(1) (Felon in Possession of a Firearm or Ammunition) the ("Subject Offenses").

4. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses, including my review of reports prepared by other law enforcement officers and agents. This affidavit is intended to show merely that there is sufficient probable cause for the

1

requested warrants and does not purport to set forth all of my knowledge of the investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## II. BACKGROUND OF AFFIANT

5. I am a United States Postal Inspector ("PI") employed by the United States Postal Inspection Service ("USPIS"), Los Angeles Division, in Pasadena, California. I have been so employed since July 2022. I am currently assigned to the Pasadena Mail Theft/Violent Crimes team, where my responsibilities include the investigation of crimes against the United States Postal Service ("USPS") and crimes related to the misuse and attack of the mail system, including theft of the United States mail; possession of stolen mail; and crimes related to the use, theft, or counterfeiting of postal keys (referred to as "arrow keys") and locks. As part of the Mail Theft team, I also investigate crimes in connection with access devices that include credit cards and debit cards, identity theft, and unauthorized use of others' information for financial gain, as these criminal schemes have been known to be perpetrated through the U.S. Mail. Additionally, I investigate violent crimes such as assaults and threats against USPS employees.

## III. SUMMARY OF PROBABLE CAUSE

6. On or about April 3, 2025, in La Puente, California, a suspect, later identified as YANEZ, committed an armed robbery

of R.P., a USPS letter carrier. YANEZ stole R.P.'s wallet, packages, and a USPS scanner, and then fled the incident in a white Toyota Corolla ("white Corolla"). LASD Industry responded to the robbery and interviewed R.P., who provided the license plate number of the white Corolla to deputies. LASD Industry notified neighboring law enforcement agencies of the white Corolla being the suspect vehicle in an armed robbery.

7. On or about April 3, 2025, after the robbery, the white Corolla was involved in a vehicle pursuit with the West Covina Police Department ("WCPD"). The pursuit came to an end following a collision on the eastbound 60 freeway onramp. WCPD took the driver, Angelina Munoz ("Munoz"), and the passenger, YANEZ into custody. WCPD searched YANEZ and found a USPS credit card in Letter Carrier R.P.'s name in YANEZ' pants pocket. WCPD contacted LASD Industry, and LASD Industry took YANEZ into custody for his suspected involvement in the USPS letter carrier robbery.

8. On or about April 4, 2025, LASD Industry obtained a search warrant for the white Corolla and recovered several items connecting YANEZ to the USPS robbery, including a black and grey camouflage ski mask, a tan camouflage shoulder bag containing R.P.'s black Pokémon wallet, a black handgun with seven 9mm ammunition rounds, a black/gray sweater, khaki sweatpants, and the SUBJECT DEVICE.

### IV. STATEMENT OF PROBABLE CAUSE

9. Based on my training and experience, my personal involvement in this investigation, conversations with other law

enforcement officers, review of reports and other documents prepared by law enforcement officers, conversations with USPS letter carriers, and review of surveillance video, I know the following:

### A. YANEZ Robs a La Puente Carrier Robbery at Gunpoint

10. On April 3, 2025, at approximately 9:45 a.m., LASD Industry Deputy Trinh ("Deputy Trinh") responded to a call of a robbery of USPS Letter Carrier R.P. that occurred in front of 1468 Mayfield Avenue, La Puente, California 91746. Deputy Trinh interviewed R.P. who reported the following:

    a. R.P. parked his USPS marked van, Mercedes Metris vehicle #2338498 ("postal van"), on the west side curb line facing southbound with the sliding door of the passenger side open. R.P. was sitting on the curb, sorting through the mail when YANEZ, wearing a black hockey mask, approached him. YANEZ got within arm's reach of R.P. and demanded YANEZ' phone, while brandishing a gray handgun in his left hand. R.P. stated YANEZ waved the handgun back and forth which caused him to fear for his life. YANEZ took the USPS scanner from R.P.'s left hand. R.P. then handed YANEZ his Pokémon-branded wallet which contained a two-dollar bill in U.S. currency. Additionally, YANEZ took three miscellaneous packages from inside the postal van. YANEZ then fled to the white Corolla, entered the driver's seat, and drove southbound on Mayland Avenue.

    b. R.P. described the suspect as a male Hispanic in his thirties with a black hockey mask. R.P. described the

suspect vehicle as a white Corolla bearing California license plate 9BLD408.

### B. Surveillance Video Shows Individual in White Corolla Committing the Robbery

11. On April 3, 2025, LASD Industry canvassed for video surveillance of the robbery. A resident of 1474 Mayland Avenue, La Puente, California 91746 provided surveillance video of the robbery to law enforcement. Based on my review of the video, I discovered the following:

    a. On April 3, 2025, at 9:37 a.m., the white Corolla drove up behind the postal van and parked in the middle of the street. A suspect matching the physical description of YANEZ exited the driver's seat of the white Corolla and walked towards the postal van in the direction where R.P. stated he was sitting (out of camera view). Seconds later, YANEZ ran back to the white Corolla, entered the driver seat, and drove southbound on Mayland Avenue.

    b. In the video, YANEZ is wearing a black mask, a black and gray jacket, and khaki pants.

### C. West Covina PD Locate YANEZ in the White Corolla Following Chase

12. On or about April 3, 2025, following the robbery incident, LASD Industry notified neighboring law enforcement agencies of the white Corolla being involved in an armed robbery. LASD Industry provided a vehicle description and license plate number of the white Corolla.

13. On or about April 3, 2025, at approximately 1:36 p.m. WCPD located the white Corolla parked at a Stater Bros parking

lot located at 375 N. Azusa Avenue, West Covina, California 91791. WCPD officers attempted to conduct a traffic stop on the white Corolla, but the driver of the white Corolla fled from WCPD. WCPD officers pursued the white Corolla for approximately seven minutes before the driver lost control and collided with a bush. The pursuit ended on the eastbound 60 freeway onramp.

14. Following the pursuit, WCPD notified LASD Industry Deputy Cortez ("Deputy Cortez") that they detained the white Corolla. Deputy Cortez contacted WCPD Officer Salas ("Officer Salas") who was on scene. Officer Salas informed Deputy Cortez of the attempted traffic stop and pursuit of the white Corolla. Officer Salas was detaining the two suspects who were inside the white Corolla. The driver of the white Corolla was identified as Munoz, and the front seat passenger was identified as YANEZ.

15. Officer Salas searched YANEZ incident to arrest and recovered a two-dollar bill in US currency and a USPS credit card issued to Letter Carrier R.P. from YANEZ' pants pocket.

16. LASD Industry Deputy Trinh responded to the location of the white Corolla. Deputy Trinh identified YANEZ as the suspect from the robbery. Deputy Trinh said YANEZ matched the physical description of the suspect in the surveillance video. Deputy Trinh took custody of YANEZ, and the evidence recovered during the search of YANEZ' person. The white Corolla was towed and held for evidence as it was identified as the vehicle used during the robbery.

### D. Law Enforcement Recovers Evidence of the Robbery in the White Corolla

17. On or about April 4, 2025, the Honorable Teresa Sullivan, a County of Los Angeles Superior Court Judge, issued a search warrant for the white Corolla to search for evidence related to the USPS robbery. On April 4, 2025, LASD Industry deputies executed the search warrant of the white Corolla, and recovered the following:

    a. <u>Items found on or near front passenger's side door panel</u>:

        i. A black and grey camouflage ski mask, matching the description of the mask the suspect wore during the USPS robbery; and

        ii. The SUBJECT DEVICE

    b. <u>Items found on or near front passenger seat</u>:

        i. A green bandana.

    c. <u>Items found on or near front passenger seat floorboard</u>:

        i. A tan camouflage shoulder bag containing a black Pokémon wallet, matching the wallet stolen from R.P. during the robbery; and

        ii. A black Polymor 80 semi-automatic handgun containing seven cartridges of 9mm ammunition.

    d. <u>Items found in the center console:</u>

        i. Two California driver's licenses ("CDL") issued to M.S.;

        ii. A CDL issued to B.R.; and

                iii. Miscellaneous access devices

      e.   <u>Items were found on or near the rear passenger's side floorboard</u>:

                i.   A black/gray sweater; and

                ii.  khaki sweatpants.

18. Based on the items recovered during the search of YANEZ and the white Corolla, and YANEZ matching the description of the suspect involved in the USPS robbery, I believe YANEZ is responsible for the robbery of USPS letter carrier R.P. In addition, I believe evidence of the Subject Offenses will be found on the SUBJECT DEVICE.

### E. **MUNOZ Tells Law Enforcement that the Evidence Belongs to YANEZ**

19. In addition to the evidence of the robbery found in the white Corolla, a grey wallet containing $2,900.00 in one-hundred-dollar bills was also recovered from the white Corolla. The wallet contained Munoz's CDL. Munoz went to the LASD Industry Station to pick up her wallet.

20. On or about April 4, 2025, Deputy Cortez contacted Munoz in the lobby of LASD Industry. Munoz took custody of her wallet. Deputy Cortez then asked Munoz about the items that were found inside of the white Corolla, and Munoz confirmed that the black/grey camouflage ski mask, green bandana, tan camouflage shoulder bag-containing the black Pokémon wallet and the black Polymor 80 semi-automatic handgun containing seven cartridges of 9mm ammunition, and the SUBJECT DEVICE belonged to YANEZ. Munoz also confirmed that the black/grey sweater

belonged to YANEZ and the khaki pants belonged to her. Munoz stated that YANEZ and herself are the only persons who have possession, custody, and control of the keys to the white Corolla and no other persons drive it.

### F. YANEZ Criminal History

21. I have reviewed YANEZ's criminal history through law enforcement databases and know that YANEZ has the following prior felony convictions:

   a. Carrying a Loaded Firearm in a public place, in violation of California Penal Code section 25850(a), on or about February 15, 2021;

   b. Evading Peace Officer: Disregard Safety, in violation of California Vehicle Code section 2800.2, on April 3, 2021;

   c. Carrying a Loaded Firearm in a public place, in violation of California Penal Code section 25850(a), on or about May 13, 2022; and

   d. Prohibited possession of ammunition, in violation of California Penal Code section 30305(a)(1), on or about November 3, 2022.

## VI. TRAINING AND EXPERIENCE ON DIGITAL DEVICES[1]

22. Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that the following electronic evidence, inter alia, is often retrievable from digital devices:

    a. Forensic methods may uncover electronic files or remnants of such files months or even years after the files have been downloaded, deleted, or viewed via the Internet. Normally, when a person deletes a file on a computer, the data contained in the file does not disappear; rather, the data remain on the hard drive until overwritten by new data, which may only occur after a long period of time. Similarly, files viewed on the Internet are often automatically downloaded into a temporary directory or cache that are only overwritten as they are replaced with more recently downloaded or viewed content and may also be recoverable months or years later.

    b. Digital devices often contain electronic evidence related to a crime, the device's user, or the existence of evidence in other locations, such as, how the device has been used, what it has been used for, who has used it, and who has been responsible for creating or maintaining records, documents,

---

[1] As used herein, the term "digital device" includes any electronic system or device capable of storing or processing data in digital form, including central processing units; desktop, laptop, notebook, and tablet computers; personal digital assistants; wireless communication devices, such as paging devices, mobile telephones, and smart phones; digital cameras; gaming consoles; peripheral input/output devices, such as keyboards, printers, scanners, monitors, and drives; related communications devices, such as modems, routers, cables, and connections; storage media; and security devices.

programs, applications, and materials on the device. That evidence is often stored in logs and other artifacts that are not kept in places where the user stores files, and in places where the user may be unaware of them. For example, recoverable data can include evidence of deleted or edited files; recently used tasks and processes; online nicknames and passwords in the form of configuration data stored by browser, e-mail, and chat programs; attachment of other devices; times the device was in use; and file creation dates and sequence.

   c.   The absence of data on a digital device may be evidence of how the device was used, what it was used for, and who used it. For example, showing the absence of certain software on a device may be necessary to rebut a claim that the device was being controlled remotely by such software.

   d.   Digital device users can also attempt to conceal data by using encryption, steganography, or by using misleading filenames and extensions. Digital devices may also contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed. Law enforcement continuously develops and acquires new methods of decryption, even for devices or data that cannot currently be decrypted.

23. Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that it can take a substantial period of time to search a digital device for many reasons, including the following:

      i.   Digital data are particularly vulnerable to inadvertent or intentional modification or destruction. Thus,

often a controlled environment with specially trained personnel may be necessary to maintain the integrity of and to conduct a complete and accurate analysis of data on digital devices, which may take substantial time, particularly as to the categories of electronic evidence referenced above. Also, there are now so many types of digital devices and programs that it is difficult to bring to a search site all of the specialized manuals, equipment, and personnel that may be required.

ii. Digital devices capable of storing multiple gigabytes are now commonplace. As an example of the amount of data this equates to, one gigabyte can store close to 19,000 average file size (300kb) Word documents, or 614 photos with an average size of 1.5MB.

24. The search warrant requests authorization to use the biometric unlock features of a device, based on the following, which I know from my training, experience, and review of publicly available materials:

a. Users may enable a biometric unlock function on some digital devices. To use this function, a user generally displays a physical feature, such as a fingerprint, face, or eye, and the device will automatically unlock if that physical feature matches one the user has stored on the device. To unlock a device enabled with a fingerprint unlock function, a user places one or more of the user's fingers on a device's fingerprint scanner for approximately one second. To unlock a device enabled with a facial, retina, or iris recognition function, the user holds the device in front of the user's face

with the user's eyes open for approximately one second.

   b. In some circumstances, a biometric unlock function will not unlock a device even if enabled, such as when a device has been restarted or inactive, has not been unlocked for a certain period of time (often 48 hours or less), or after a certain number of unsuccessful unlock attempts. Thus, the opportunity to use a biometric unlock function even on an enabled device may exist for only a short time. I do not know the passcodes of the devices likely to be found in the search.

   c. Thus, the warrant I am applying for would permit law enforcement personnel to, with respect to any device that appears to have a biometric sensor and falls within the scope of the warrant: (1) depress YANEZ' thumb and/or fingers on the device(s); and (2) hold the device(s) in front of YANEZ' face with eyes open to activate the facial-, iris-, and/or retina-recognition feature.

  25. Other than what has been described herein, to my knowledge, the United States has not attempted to obtain this data by other means.

## VII. CONCLUSION

  26. For all the reasons described above, there is probable cause to believe that YANEZ committed a violation of 18 U.S.C. § 2114 (Robbery of a United States Postal Carrier). There is also probable cause that the items listed in Attachment B, which constitute evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 2114(a) (Robbery of a United States Postal Service Letter Carrier), 18 U.S.C. § 1708 (Possession of Stolen

Mail); 18 U.S.C. § 1029 (Access Device Fraud), 18 U.S.C. § 1028A (Aggravated Identity Theft), and 18 U.S.C. § 922(g)(1) (Felon in Possession of a Firearm or Ammunition) collectively, the ("Subject Offenses") will be found in a search of the SUBJECT DEVICE described in Attachment A.

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this 10th day of
June, 2025.

_____
HON. JACQUELINE CHOOLJIAN
UNITED STATES MAGISTRATE JUDGE